IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PATRICIA TANNER,<br>TJINTA ESTATES,<br><br>Plaintiffs,<br><br>v.<br><br>HEATH JOHNSTON, et al.<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:11-cv-00028-TS-DBP<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Dustin B. Pead |

**I. INTRODUCTION**

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(A). Plaintiffs are Patricia Tanner and Tjinta Estates, the entity in which Ms. Tanner held the bulk of her financial assets. The Court groups Defendants into two factions. The "Johnston Defendants" consist of H&S Investments, and its employees Heath Johnston, Craig Lewis, and Timothy Ross, as well as Justin Johnston. The "NAI Defendants" consist of American Commercial Real Estate Specialists Group, and its alleged alter ego Utah County Commercial Real Estate Specialists Group, both of which do business as NAI.

Before the Court is the NAI Defendants' motion to compel disclosure of Plaintiffs' settlement agreement with the Johnston Defendants. For the reasons below, the Court **GRANTS** the motion. (Docket No. 52.)

## II. BACKGROUND

The following information comes from Plaintiffs' amended complaint. (Docket No. 20.) In 2006, all the Defendants allegedly induced Plaintiffs to invest $600,000 in a real estate development by falsely guaranteeing Plaintiffs a 15% annual return on their investment. This return was guaranteed by a promissory note, a personal guarantee from the Johnston Defendants, and a lease agreement. The Johnston Defendants defaulted on their repayment obligations.

Plaintiffs admit that, on January 23, 2012, they signed a confidential settlement agreement with the Johnston Defendants. (Docket No. 53-2 at 49.) Pursuant to the settled parties' stipulation, on January 26, 2012, District Judge Ted Stewart entered a judgment against the Johnston Defendants on some of Plaintiff's claims. (Docket No. 51.) District Judge Stewart dismissed without prejudice Plaintiff's remaining claims against the Johnston Defendants. (Id.)

## III. STANDARD OF REVIEW FOR MOTION TO COMPEL

Where a party refuses to produce discovery, the requesting party may file a motion to compel a discovery response pursuant to Fed. R. Civ. P. 37(a).

## IV. ANALYSIS OF THE NAI DEFENDANTS' MOTION TO COMPEL

The NAI Defendants move to compel Plaintiffs to disclose the terms of their settlement agreement with the Johnston Defendants, as well as "an accounting of the proceeds of the settlement agreement." (Docket No. 52 at 1-2.) Plaintiffs oppose because they claim this information is confidential, public policy favors nondisclosure, and the settlement agreement is irrelevant. (Docket No. 56.)

**A. Confidentiality**

Plaintiffs oppose producing their settlement agreement because it is, by its terms, confidential. (Docket No. 56 at 3.)[1] Conversely, the NAI Defendants cite several district court decisions refusing to protect confidential information from discovery. (Docket No. 53 at 4.)[2]

Indeed, many federal district courts, including some within the Tenth Circuit's jurisdiction, maintain that settlement agreements are not shielded from discovery merely because they are confidential. Pia v. Supernova Media, Inc., No. 2:09-cv-840-CW, 2011 WL 6069271, at *1 (D. Ut. 2011) ("A general concern for protecting confidentiality does not equate to privilege. . . . [L]itigants may not shield otherwise discoverable information from disclosure . . . merely by agreeing to maintain its confidentiality." (citing DIRECTV, Inc. v. Puccinelli, 224 F.R.D. 677, 684-86 (D. Kan. 2004))).

In light of the above, and in the absence of Tenth Circuit guidance on the issue, this Court finds Plaintiffs cannot shield their settlement agreement from discovery merely based on its confidentiality.

**B. Fed. R. Evid. 408 Public Policy**

Plaintiffs also oppose producing the settlement agreement by relying on Fed. R. Evid. 408(a)(2), which renders inadmissible any conduct or statements "made during compromise

[1] To support this, Plaintiffs cite Centillion Data Sys., Inc. v. Ameritech Corp., 193 F.R.D. 550 (S.D. Ind. 1999). However, in that case, the district court denied a motion to compel production of a settlement agreement because it lacked relevancy, not merely because it was confidential. Id. at 553.

[2] Board of Trs. V. Tyco Int'l. Ltd., 253 F.R.D. 521, 523 (C.D. Cal. 2008); Am. Guar. & Liab. Ins. Co. v. CTA Acoustics, Inc., No. 05-80-KKC, 2007 WL 1099620 (E.D. Ky. Apr. 10, 2007); Conopco, Inc. v. Wein, No. 05Civ.9899(RCC)(THK), 2007 WL 1040676 (S.D.N.Y. Apr. 4, 2007).

negotiations about" claims. (Docket No. 56 at 2.) Plaintiffs emphasize that Fed. R. Evid. 408 reflects a strong public policy favoring nondisclosure of settlement agreements. (Id. at 3.)

While the Court does not question the public policy reasons behind Fed. R. Evid. 408, the rule, by its own terms, governs the admissibility of settlement material rather than its discoverability.[3] Thermal Design, Inc. v. Guardian Bldg. Prod., Inc., 270 F.R.D. 437, 438-439 (E.D. Wis. 2010); In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp. 2d 201, 211 (D.D.C. 2005); Computer Assoc. Int'l, Inc. v. Am. Fundware, Inc., 831 F. Supp. 1516 (Dist. Colo. 1993) ("Rule 408 is a preclusionary rule, not a discovery rule."); Bennet v. La Pere, 112 F.R.D. 136, 139-40 (D.R.I. 1986).

Because Fed. R. Evid. 408 governs admissibility rather than discoverability, this Court finds Plaintiffs cannot rely on it to prevent the production of their completed settlement agreement.

**C. Relevance Standard Applied to Confidential Settlement Agreements**

Based on the analysis above, Plaintiffs' non-privileged settlement agreement with the Johnston Defendants is admissible as long as it is relevant. Unfortunately, there is country-wide discord about the showing of relevance required to justify disclosure of a settlement agreement.

---

[3] Fed. R. Evid. 408, in relevant part, reads:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Plaintiffs primarily rely on Bottaro v. Hatton Assocs., 96 F.R.D. 158 (D.C.N.Y. 1982), and its progeny, to urge this Court to adapt a heightened relevancy standard for discovery related to confidential settlement agreements. (Docket No. 56 at 4.) In Bottaro, the district court "require[d] some *particularized showing* of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." 96 F.R.D. at 160 (emphasis added). See also Doe v. Methacton Sch. Dist., 164 F.R.D. 175 (E.D. Pa. 1995); Lesal Interiors, Inc. v. Resolution Trust Corp., 153 F.R.D. 552, 562 (D.N.J. 1994). The Bottaro court required this heightened standard because of "the strong public policy of favoring settlements and the congressional intent to further that policy by insulating the bargaining table from unnecessary intrusions." 96 F.R.D. at 160.

In contrast, the NAI Defendants urge the Court to use the normal relevancy standard espoused at Fed. R. Civ. P. 26(b). (Docket No. 61 at 3-5.) This rule allows discovery of anything "relevant to any party's claim or defense" that "appears *reasonably calculated* to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added). See also Serina v. Albertson's, Inc., 128 F.R.D. 290, 293 (M.D. Fla. 1989) (declining to decide Botarro's applicability); Morse/Diesel, Inc. v. Fid. & Deposit Co., 122 F.R.D. 447, 450 n.4 (S.D.N.Y. 1988) (same); Bennet v. La Pere, 112 F.R.D. at 139 (rejecting Bottaro).

Indeed, many courts refuse to apply a heightened relevancy standard to settlement agreements, and instead shift the relevancy burdens. For example, some courts require the party opposing the discovery request to show the settlement agreement is not relevant and not reasonably calculated to lead to discovery of admissible evidence. In re Initial Public Offering Sec. Litig., No. 21 MC 92 (SAS), 2004 WL 60290, at *4-5 (S.D.N.Y. Jan. 12, 2004); City of Wichita v. Aero Holdings, Inc., 192 F.R.D. 300, 302 (D. Kan. 2000) ("Courts, absent obvious

requests for irrelevant discovery, are in no position at the discovery stage of litigation to make uninformed conclusions on what is or is not relevant."); Bennet, 112 F.R.D. at 139.

Yet other courts place the relevancy burden on the party seeking production of the settlement agreement. Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 650 (N.D. Ill. 1994); Fid. Fed. Sav. & Loan Ass'n v. Felicetti, 148 F.R.D. 532, 534 (E.D. Pa. 1993); Morse/Diesel, Inc. v. Trinity Indus., Inc., 142 F.R.D. 80, 84 (S.D.N.Y. 1992).

The Tenth Circuit has not ruled on the issue. Heartland Surgical Specialty Hosp. v. Midwest Div., Inc., No. 05-2164-MLB-DWB, 2007 WL 1246216 (D. Kan. Apr. 27, 2007). However, the Utah District Court previously ruled in line with courts that place the relevancy burden on the party seeking discovery. Pia, 2011 WL 6069271, at *2 (finding "confidential settlement agreements are discoverable *if a party makes a showing* that documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence.") (emphasis added). In so ruling, the Utah District Court acknowledged a case applying a particularized showing standard, but stated the case did not "immunize[ ] settlements on relevant subjects from discovery." Id.

Based on the guidance above, this Court finds that Plaintiffs' confidential settlement agreement is discoverable so long as the NAI Defendants show the agreement is relevant and reasonably calculated to lead to discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

### D. Whether Settlement Agreement is Relevant Under Fed. R. Civ. P. 26(b)(1)

The NAI Defendants argue that Plaintiffs' settlement agreement with the Johnston Defendants, including an accounting of the proceeds paid, is relevant to "demonstrate what, if any, damages" Plaintiffs "may still allege." (Docket No. 53 at 5.) Specifically, this information is relevant "(1) to determine how their potential liability will be affected, (2) to assess dispute

resolution options, (3) and to evaluate the settlement's impact on witnesses in this case, which include former defendants that have been released." (Docket No. 61 at 2.)

**1. Relevance Related to the NAI Defendants' Potential Liability**

Of Plaintiff's fourteen claims, five overlapped against both the Johnston Defendants and the NAI Defendants. (Docket No. 20.) That is, Plaintiffs accused both sets of Defendants of concurrently: (1) violating federal securities acts; (2) violating the Utah Securities Act; (3) committing fraudulent nondisclosure; and (4) committing negligence. (Id. at 23, 27, 37-38.)[4] Plaintiffs also claimed the NAI Defendants bore vicarious liability for Justin Johnston's actions. (Id. at 41.)[5] Plaintiffs sought to hold all of the Defendants "jointly and severally" liable for compensatory damages and attorney's fees. (Id. at 43.)

Pursuant to the settling parties' stipulation, District Judge Stewart dismissed these "overlapping" claims against the Johnston Defendants without prejudice. (Docket No. 60.)[6] Given the confidential nature of the parties' settlement agreement, Plaintiffs never disclosed what, if any, amount they settled these overlapping claims for.

As such, the NAI Defendants contend the settlement agreement, including an accounting of proceeds paid, is relevant to limit their potential liability on these overlapping claims.

---

[4] The federal securities act claim overlapped against the NAI Defendants and H&S Investments, Heath Johnston, Craig Lewis, and Timothy Ross. (Docket No. 20 at 23.) The Utah Securities Act claim overlapped against the NAI Defendants and H&S Investments, Heath Johnston, and Craig Lewis. (Id. at 27.) The fraudulent nondisclosure and negligence claims overlapped against the NAI Defendants and Justin Johnston. (Id. at 37-38.)

[5] Plaintiffs sought judgment against all of the Defendants, "jointly and severally," for compensatory damages in excess of $600,000.00, and for attorney's fees. (Docket No. 20 at 43.) Plaintiffs also sought a judgment that the NAI Defendants were vicariously liable for damages caused by Justin Johnston. (Id. at 44.)

[6] Pursuant to the parties' stipulation, District Judge Stewart found the Johnston Defendants liable on three claims unrelated to the NAI Defendants, and ordered the Johnston Defendants to pay Plaintiffs $940,850.00 on these claims, and an additional $50,000.00 in attorney's fees. (Docket No. 51 at 4.)

(Docket No. 61 at 3.) Given the overlap, "Plaintiffs' recovery from the other defendants has a direct impact on the Plaintiffs' remaining case against the NAI Defendants." (Id. at 3.) The NAI Defendants fear becoming "a source of double recovery for the Plaintiffs if the settlement agreement shows that the Plaintiffs have been made whole on some, all, or parts of their claims." (Id.)

To counter the NAI Defendants' request, Plaintiffs refer to several district court cases where information about damages was found irrelevant "to any issue at trial." (Docket No. 56 at 5-6) (citing Bottaro, 96 F.R.D. 158; Methacton, 164 F.R.D. 175; Lesal Interiors, 153 F.R.D. 552; Centillion Data Sys., Inc. v. Ameritech Corp., 193 F.R.D. 550 (S.D. Ind. 1999)). Pursuant to these cases, Plaintiffs assert that "when a final judgment is entered against NAI it will be a simple, ministerial matter for this Court to determine whether NAI has any right of set-off or contribution from the Johnston [D]efendants." (Docket No. 56 at 8.) However, the Court finds the cases Plaintiff cites distinguishable.

Bottaro applied a heightened relevancy standard to find a defendant's request to access a settlement agreement "solely on the hope that it will somehow lead to admissible evidence on the question of damages" was insufficient. 96 F.R.D. at 159. See also Methacton, 164 F.R.D. at 176 (applying a heightened relevancy standard to find a non-settling defendant's "broad assertion[s]" that a settlement agreement was relevant to damages lacked "any detail or analysis.").

In contrast, this Court refuses to apply this heightened relevancy standard, and finds the NAI Defendants provided a detailed analysis about the relevancy of the settlement agreement. (See Docket No. 61 at 3-6.) Moreover, even the Bottaro court acknowledged "discovery into negotiations can be based on the reasonable belief that it may produce information on the

question of damages that can be brought into evidence independent of the settlement context." 96 F.R.D. at 159.

Along the same lines, Lesal Interiors and Centillion are inapposite because they required a particularized showing of relevance, and denied litigants access to settlement negotiations where those negotiations took place between their opponents and non-parties. Lesal Interiors, 153 F.R.D. at 562 (ruling a plaintiff lacked standing to conduct discovery of settlement negotiations in a lawsuit to which it was not a party); Centillion, 193 F.R.D. at 552 (finding plaintiff's settlement agreement with entities from an earlier, separate case could not be assumed "relevant to the issues of liability or damages" in plaintiff's case against a new defendant). Clearly, the NAI defendants have standing to request discovery of Plaintiffs' and their co-defendants' settlement agreement where Plaintiffs originally accused both sets of defendants of joint wrongdoing.

The Court is more persuaded by the NAI Defendants' argument that settlement agreements about overlapping claims are relevant, and therefore discoverable. (Docket No. 61 at 3.) See White v. Kennet Warren & Son, Ltd., 203 F.R.D. 364, 366-367 (N.D. Ill. 2001) (holding a settlement agreement between plaintiff and a settling defendant was relevant to the non-settling defendant because "an overlap of claims" against both defendants stemming from their undervaluing musical instruments could reduce the non-settling defendant's "potential liability."). See also In re Enron Corp. Sec., Derivative & ERISA Litig., 623 F. Supp. 2d 798, 836 (S.D. Tex. 2009) (concluding a settlement agreement was discoverable to non-settling defendant because plaintiff could not be compensated twice for the same injury under Texas law); Heartland, 2007 WL 1246216, at *4 (deeming a settlement agreement relevant where plaintiff made a conspiracy claim that sought "to impute the acts of each defendant against all

other defendants, and to hold them jointly liable for the alleged antitrust and tortious interference claims."); Atchison Casting Corp. v. Marsh, Inc., 216 F.R.D. 225, 227 (D. Mass. 2003) (ruling that plaintiff insured's settlement agreement with defendant insurer was relevant to plaintiff's action against defendant insurance broker where the settlement agreement showed the amount insurer refused to pay, and the plaintiff sought the difference in coverage from the insurance broker); Bennet, 112 F.R.D. at 138 (ordering disclosure of settlement agreement between plaintiff patients and defendant physicians because the damages plaintiffs could collect from defendant hospital would "depend to some extent on the terms, amount, and value of the [p]hysician's settlement.").

Based on the analysis above, the Court finds terms of Plaintiffs' settlement agreement with the Johnston Defendants, including an accounting of proceeds, that are related to the overlapping claims, are relevant to the NAI Defendants' defenses. Therefore, the Court **GRANTS** the NAI Defendants' motion to compel on this limited ground. (Docket No. 52.) The terms and proceeds relating to the overlapping claims are reasonably calculated to lead the NAI defendants to discover admissible evidence about the extent of their liability for Plaintiffs' damages on these claims. Conversely, the Court does not believe settlement information unrelated to these overlapping claims is relevant to the NAI Defendants where it does not impact their potential liability or damages.

**2. Relevance Related to Witness Bias**

The NAI Defendants also argue the settlement agreement is relevant because it will help them evaluate the "potential bias, interest and credibility" of Heath Johnston and Justin Johnston as witnesses "based on the nature of the release they obtained and the nature of the consideration

they gave." (Docket No. 61 at 4.)[7] See White, 203 F.R.D. 364 (permitting discovery of settlement agreement to allow parties to explore issues related to witness bias); Transp. Alliance Bank, Inc. v. Arrow Trucking Co., No. 10-CV-016-GFK-FHM, 2011 WL 4964034, at *2 (N.D. Okla. Oct. 19, 2011) (finding settlement agreement between plaintiff and settling defendant was "relevant for discovery purposes" to the non-settling defendant to establish the settling defendant's witness bias and credibility); Allen Cnty v. Reilly Indus., 197 F.R.D. 352, 354 (N.D. Ohio 2000) (implying a settlement agreement could be relevant to show witness bias). Indeed, even Fed. R. Evid. 408(b) renders admissible any conduct or statements made during compromise negotiations so long as such evidence is limited to proving witness bias or prejudice.

Based on the case law above, the Court finds the terms of the settlement agreement and accounting of the proceeds related to the overlapping claims are relevant to establish the witness credibility and bias of Heath Johnston and Justin Johnston. As such, the Court **GRANTS** the NAI Defendants' motion to compel in this respect. (Docket No. 52.)

**3. Relevance Related to Dispute Resolution**

The NAI Defendants also claim the settlement agreement is relevant "because it could promote dispute resolution" if they can "properly estimate the Plaintiff's current alleged damages." (Docket No. 61 at 3.) See White, 203 F.R.D. at 367 (reasoning that, in a situation involving overlapping claims against multiple defendants, the amount some parties settled for "has great strategic significance to the remaining defendants" because it could "promote settlement of the remaining claims . . . .").

---

[7] The NAI Defendants raised the issue of witness bias for the first time in their reply brief. (Docket No. 61.) Although it is not a direct rebuttal to Plaintiffs' opposition, which centered mostly on damages (Docket No. 57), it is tangentially related to Plaintiffs' broader argument on relevance. Therefore, the Court will address this issue.

On the other hand, Plaintiffs claim the NAI Defendants' desire to "access . . . the confidential settlement information to better evaluate whether [they] should settle this case, or to help [them] refine [their] litigation or negotiation strategies . . . does not render the information relevant or discoverable." (Docket No. 56 at 5.) See ABF Capital Mgmt. v. Askin Capital, Nos. 96 Civ. 2978 (RWS), 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (noting that "relevance, not simply promotion of settlement, must be the touchstone" for determining whether discovery of a settlement agreement is permitted); Centillion, 193 F.R.D. at 552 ("[I]nformation is not relevant or discoverable . . . because it might assist a party's evaluation of whether to settle or try a case or help a party prepare negotiating strategies.").

After reviewing the cases cited by the parties, the Court agrees with Plaintiffs that evaluating settlement options is related less to relevance, than to policy reasons favoring disclosure of settlement agreements. As such, the Court rejects the NAI Defendants' argument that the settlement agreement is relevant because it may alter their settlement negotiation strategy.

**V. PROTECTIVE ORDER**

Given the confidential nature of the settlement agreement, the NAI Defendants "are willing to consider entering into a properly negotiated and executed protective order." (Docket No. 53 at 5.) See also Pia, 2011 WL 6069271, at *1-2 (imposing a protective order on the disclosure of a confidential settlement agreement because the information "should likely not be made public . . . ."); Thermal Design, Inc., 270 F.R.D. at 438 ("Most cases find that a settlement agreement is discoverable despite a confidential designation, especially where there is a protective order in place to prevent unauthorized disclosure.").

The Court is mindful of Plaintiffs' concerns regarding the confidentiality of their settlement agreement. Therefore, the Court directs the parties to submit an agreed upon protective order as outlined below. See DIRECTV, 224 F.R.D. at 687 (granting a motion to compel settlement materials, but instructing the parties to submit a protective order).

**VI. ORDERS**

For the reasons set forth above, the Court issues the following orders:

**IT IS ORDERED** that the NAI Defendants' motion to compel the settlement agreement between Plaintiffs and the Johnston Defendants, which includes an accounting of the proceeds paid under the settlement agreement, is **GRANTED**. (Docket No. 52.)

**IT IS FURTHER ORDERED** that the only portions of the settlement agreement and accounting of proceeds subject to discovery are those related to the five overlapping claims of: (1) violating federal securities acts; (2) violating the Utah Securities Act; (3) committing fraudulent nondisclosure; (4) committing negligence; and (5) the NAI Defendants' vicarious liability for Justin Johnston's actions.

**IT IS FURTHER ORDERED** that, by **January 22, 2013**, the parties shall confer and submit an agreed upon protective order prohibiting: (1) the disclosure of this information and documents to non-parties; and (2) the use of such information/documents outside of this lawsuit. If the parties are unable to reach an agreement, the Court will allow Plaintiffs **seven (7) days** thereafter to move for a protective order. Defendants shall have **seven (7) days** thereafter to file a response to the motion for a protective order. Plaintiffs shall have **five (5) days** thereafter to file a reply to their motion.[8]

[8] The Court recognizes that these deadlines go beyond the fact discovery cut-off of February 1, 2013. (Docket No. 66.) However, the Court feels this limited extension solely for the purpose of the protective order is warranted.

**IT IS FURTHER ORDERED** that no reasonable expenses be awarded to the NAI Defendants pursuant to Fed. R. Civ. P. 37(a)(5)(A)(ii). Plaintiffs' nondisclosure was substantially justified given the unsettled state of the law relating to discovery of confidential settlement agreements.

DATED this 8th day of January, 2013.

Dustin B. Pead
United States Magistrate Judge